Argued June 26; affirmed July 9, 1935

# HAAS v. BATES ET AL.
(47 P. (2d) 243)

*Frank S. Senn,* of Portland (Senn & Recken, of Portland, on the brief), for appellants.

*Louis Schnitzer,* of Portland, for respondent.

KELLY, J. The accident resulting in plaintiff's injuries occurred on Friday the 13th day of October, 1933, near the town of Remote. The car in which plaintiff and defendant, Pearson, were riding left the road at a curve and overturned. Defendants contend that plaintiff was a guest while riding in the automobile of defendant, Pearson. The plaintiff contends otherwise.

■ It is an admitted fact that defendants constituted a co-partnership, and, as partners, were financially interested in a beach placer mining property near Bandon, Oregon. Plaintiff is a mining engineer with his offices in Portland. Defendants sought his services in the matter of making an examination and a report upon such mining property.

Only two of the defendants, Bates and Pearson, were present when the arrangements for such examination were made.

We quote from plaintiff's testimony:

"* * * They called at my office, as I said, and told me, Mr. Bates and Mr. Pearson, told me they were members of the firm of Bates, Lively & Pearson, which was interested in a beach placer mine near Bandon, Oregon, and they were talking to me with respect to examining that property and making a report. They wanted to know what my charge would be and I told them what it would be and there was a little discussion about the terms and we finally decided they would pay me $100.00 and all expenses to make the examination and report; and I asked them how soon they wanted me to go down and they said: 'Well, just as soon as possible.' 'Well,' I said, 'I can go by train or I can go by bus; I haven't a car here;' and Mr. Pearson said: 'Well, I have never seen that mine; I have got some money in it; may put up some more; I want to see it first and I am going down tomorrow morning,' and he said: 'I want you to go along with me.'
* * * * * *

Q. What was the final agreement that you said you reached with these gentlemen?

A. As to payment?

Q. Yes, compensation.

A. $100.00 and all expenses in connection with the examination, traveling, hotels, any expenses that were incurred in connection with the commission.

* * * * * *

Q. Who paid the expenses at the hotel?

A. Mr. Pearson paid all my expenses.

Q. Mr. Pearson paid all your expenses?

A. Yes."

We quote from Mr. Pearson's testimony:

"We finally agreed with Mr. Haas that he should go down there for the price of $100.00 and expenses and he discussed, said something about he might go on a train or bus or something like that, and as we were leaving the room, it occurred to me that I hadn't seen this place; I didn't know anything about it; and I would like to go down there myself, and I mentioned to Mr. Bates, I think I would like to take a trip down there with Mr. Haas; so I offered to have him go with me and it was agreed that I should meet him at the Porter Building the next morning at 7:00 o'clock."

Defendant Bates testified as follows:

"A. The arrangement was that he go down there for one hundred dollars and his expenses and it was even discussed as to whether he would go on the bus or train or the stage; it didn't make any difference; he could go over either way just as quick; we only asked him, Mr. Pearson did, that he make the trip as soon as he could. He said he would go the next day. We then arose from our chairs and turned toward the door. We had made what I understood a very definite arrangement and as I, . . . I remember I was about to open the door, when Mr. Pearson mentioned, 'By the way, I think I would like to go down there myself,' and I says, 'Why don't you, Walter; you have never been there; Paul Lively and I have been there and you might as well go and see it, if you like to; it is nice weather.'

So they entered into conversation as to when they could go the next day and what time was agreeable to both parties.''

Defendants rely upon the case of *Smith v. Laflar,* 137 Or. 230 (2 P. (2d) 18), in support of their contention in the case at bar that plaintiff was merely a guest when the accident occurred. In the Smith-Laflar case, the guest statute is quoted and then it is stated: ''This statute makes payment, or the creation of an obligation to pay, for the transportation furnished the test of liability except in cases of gross negligence'', etc.

It is also there stated that:

''Payment is the transfer of money or property or some other thing of value in discharge of an existing obligation.''

There, the defendant was a real estate broker who transported the plaintiff from Salem to Harrisburg in an attempt to negotiate an exchange of property belonging to defendant's client for property belonging to plaintiff. It was held that the commission, which defendant might have earned if the trade had been consummated, was too remote to be considered as payment.

In the case at bar, under the testimony above quoted, the jury were warranted in finding that the contract, ultimately agreed upon between plaintiff and defendant, was to the effect that plaintiff would perform the services involved in making an examination of the mining property and submitting a report thereupon for $100 in money and transportation in the automobile of defendant Pearson, together with the payment of hotel and other traveling expenses. Certainly, for the transportation thus afforded to plaintiff, the payment of his expenses on the trip and the further payment of $100, defendants were entitled not only to the services of

plaintiff in making the examination of the property, which services had already been performed when the accident occurred, but also to the report which plaintiff had agreed to submit.

The case of *Rauch v. Stecklein*, 142 Or. 286 (20 P. (2d) 387), is also cited by defendants. There is the same distinction between that case and the case at bar as there is between the Smith-Laflar case and the instant case. There, defendant was the leader of an orchestra to which plaintiff's son belonged. On returning in the defendant's automobile from a picnic, where the orchestra had furnished music, the car overturned and plaintiff's son was killed. A membership fee was paid to defendant by the members of the orchestra. In the opinion in that case it is stated:

"Apparently the orchestra made no charge whatever for its services in playing at this picnic, but played at the request of the church to which all of the members belonged. The defendant charged Paul no fee for the transporting him to the picnic."

In the case at bar, when the accident occurred, part of the valuable services contemplated by the contract had been rendered by plantiff in consideration of the transportation, the traveling expenses and $100 in cash, namely the trip to the mining property and the examination thereof. Subsequently, the rest of the services were performed by the submission of plaintiff's report.

Two Massachusetts cases are also cited by defendants. In both of them the evidence is insufficient to indicate anything more than the friendly relations or the sense of mutual obligation arising between kindred: *Baker v. Hurwitch*, 265 Mass. 360 (164 N. E. 87); *Jacobson v. Stone*, 277 Mass. 323 (178 N. E. 636).

If the jury concluded that the contract, as finally agreed upon between plaintiff and defendants, was as

hereinabove suggested, the benefit to defendants was not for a past consideration, but for one contemplated by the parties at the time the contract was made, and which had not entirely passed when the accident occurred.

The question, whether plaintiff was a guest, was submitted to the jury. We quote from the instructions of the court thereupon:

"I instruct you that there is a law of this state known as the guest statute. This statute provides that when a person is transported from one place to another as a guest and without payment for such transportation then such person cannot recover damages from his host unless the jury is satisfied that the driver of the car has been guilty of gross negligence or was driving his car in reckless disregard of the rights of his guest. Now, in this case, the plaintiff does not claim or allege that Mr. Pearson was guilty of gross negligence, and if you find that at the time of this accident Mr. Pearson was transporting Mr. Haas as his guest and without payment for such transportation, then I instruct you that the plaintiff cannot recover in this action and your verdict would have to be for the defendants. By payment we mean the transfer of money or property or some other thing of value in the discharge of an existing obligation."

We find no reversible error.

Plaintiff urges that it does not appear that there was probable cause for taking an appeal in this case and suggests that the court would be warranted in imposing the penalty of 10 per cent pursuant to section 7-514, Oregon Code 1930. Our aversion to penalties may in part contribute to the certainty that there was such probable cause; but, notwithstanding that, no such penalty will be imposed.

The judgment of the circuit court is affirmed.